TueNey, J.,
delivered tbe opinion of tbe Court.
In prosecutions by indictment or presentment, the accused hath a right to a speedy public trial by an impartial jury of the county in which the crime shall have been committed: Cons., Art. 1, Sec. 9.
After treating of the statement of venue in the margin of an indictment, Mr. Chitty, in vol. 1, page 194, of his work on Criminal Law, proceeds: “In the body of the indictment, also, the facts should in general, be stated to have arisen in the county in which the indictment is preferred, so that it may appear the offense was within the jurisdiction of the court.”
It is well established at common law, that, if the indictment or presentment fail to lay venue at all, or fail to lay it in the county in which it is proposed to try the accused, it will be bad, and, on motion, quashed; or, after trial and conviction, the judgment will be arrested. In the bill of exceptions before us, there is no proof positive nor circumstantial, of venue, and it is concluded: “This was all the evidence.”
It is insisted, we must presume the court of original jurisdiction did all things rightly until the contrary appear affirmatively. Trying this proposition by the inflexible constitutional rule, that the venue must be proved or the accused acquitted, we would, in a universal adoption of the premises, have the strange anomaly in the organization of our courts, that, as to this our first and vital ingredient in the offense necessary and indispensable to the original jurisdiction, the inferior court would have the exclusive jurisdiction of determining, first, the necessity, and next, the fact of proof of venue; and this court, *433 created as an appellate court, with no jurisdiction except revisory, and having imposed upon it the duty of reviewing the action or non-action of inferior courts, not in a limited capacity, but generally, and embracing all things done and not done pertinent to the issue, especially in criminal proceedings, conjecturing in the absence of all proof positive or circumstantial, that the accused had had dealt to him every right of impartial trial in the mode and place made certain to him by the Constitution.
Recognizing such to be the law, and admitting, as we must, that venue may be proved by circumstances as well as direct proof, a case might arise in which the facts relied upon as evidence of venue would in fact, be insufficient or reasonably doubtful, still, a jury having convicted, and the record showing all the facts adduced, it would be the duty of this court, acknowledging as its rule of government, the statute, that it should not grant a new trial, “because the bill of exceptions fails to state that the venue was proven in the court below,” to hold that in its revision it can not look to or consider the sparseness of proof touching that 'single question, but must supply by-presumption, the real lack of quantum in necessary testimony, and take for granted, notwithstanding its sworn obligation, that full proof was made but omitted, (left out, dropt from, not inserted,) in the bill of exceptions. Such doctrine constitutes this court the power to supply the bill of exceptions in the one particular as to secure punishment, when in all likelihood the facts themselves have failed.
*434 We are too far advanced in tbe decline of constitutional rights to fritter away tbe remnant.
Tbe 9tli subdivision of Sec. 5242, of the Code, is void. Eeverse the judgment.
The Attorney-General presented the following petition to rebear this cause:
Tbe Attorney-General for the State of Tennessee, respectfully asks the Court to reconsider tbe question involved in this cause. He is induced to make this application by tbe consideration that tbe point involved is one of constitutional law, affecting tbe legislative power of the State, and extending the restrictions of tbe constitution over that department of the state government, to an extent fraught with the gravest consequences. He is compelled by his views of constitutional law, derived from the unvarying doctrines of tbe adjudged cases, to regard the declaration that an unwarrantable exercise of power has been assumed by the Legislature, as an act of tbe greatest delicacy, and one only to be resorted to in extreme cases. To hold that the Legislature of tbe State is powerless to cure defects in criminal procedure, in any case, is a matter of such vital consequence, that be feels that it would be dereliction of duty to cease from efforts to avert such a decision, Avhile any resource remains, known to the practice of the Court. He, therefore, respectfully asks the Court to consider the following positions :
He admits fully that the Constitution guarantees the right to a defendant to be tried in tbe county where the *435 offense has been committee!, but he respectfully submits that the constitutional privilege of being so tried, is a thing wholly distinct and independent of the preservation in any form, of the evidence that he has been so tried.
In ninety-nine cases in a hundred, the party is tried and there is no evidence preserved at all. In all these cases, if they are brought into the Supreme Court, there being no evidence at all, the court presumes that the party has had his constitutional privilege of being tried in the proper county.
If the privilege can be presumed to have been allowed in these cases without proof, then the principle is established that the preservation of the proof is not a part of the constitutional privilege. It may be said that the allegation is always there, and that the finding is conclusive on this question. But the allegation is dispensed with, and this has been held by this Court to be constitutional, in The State v. Quartemus, 3 Heis., 65. And it was held by the former bench to be valid in The State v. Shull, 3 Head, 42.[1] So that in many cases it may, without any constitutional interposition, be the case, that a man is punished in the proper county in a valid proceeding, in which it does not appear by any allegation, or proof, that the offense was committed in the county where it was tried. On what principle? That the Legislature had the power not to take away the privilege, but to regulate the code of criminal procedure, that they have the right to dispense with the allegation of venue, and so to frame criminal pleadings and entries, that in the absence of any thing *436 in the record to show that this right has been infringed, it shall be presumed that the right has been res]jected.
He respectfully submits, that this is not an exceptional rule, or any hardship on a party. No person shall for the same offense, he put twice in jeopardy of life or limb. What guaranty has this court, that a party has not been twice in jeopardy? Simply that he does not plead it. It is as high a constitutional privilege as the other, but it is matter of special plea, presumed conclusively in the absence of such plea, not to exist. This establishes presumption against constitutional rights; that is, the State is not bound to negative in the record or bill of exceptions, the existence -of a constitutional objection. If then this constitutional right must be set up by plea, would it not be competent for the Legislature, by statute, to declare that a defect of local jurisdiction should be set up by special plea, and should not be in issue on a plea of not guilty. It would then be placed on the exact footing on which stands the plea of auterfois ■convid or acquit, a correlative constitutional right. If the Legislature could regulate the plea, they could regulate the proof, and throw the burden of proof on the defendant. If they can throw the burden of proof on him, they can throw on him the burden of negativing the existence of the proof by an express averment in the bill of exceptions that it was not proved.
Permit me to return for a moment to the distinction between a right and the proof of the exercise of that right. That is broad enough. So is the exercise of the right distinct from the proof of the exercise of it. We exercise the right of voting, but who cares for the preservation *437 of the proof that he has voted. Many facts exist of which we have no knowledge; many others we know, of which we have no permanent proofs. Lands descend by the death of an ancestor to the heir. The descent is a fact. The proof may not exist in tangible form. The heir may enter by a perfect right, and hold by a perfect right, and yet if 'called on for proof, might be without any evidence of his right. His right and his proof of right are not the same thing. So a party may have a deed and a title. But the loss of his deed leaves his title unaffected — still vested in him as before. The title is one thing — the proof, the muniment, another. The right to be tried in the proper county is one thing; the making of the proof is another; its preservation still another.
I maintain that the prisoner may have the right, and may obtain the benefit of the right, of being tried in his own county, and that there may still be no proof existing on any record that he has been tried in the proper county. Yet the fact exists. If the fact exists, he has had his constitutional privilege. If the fact was not so, and there were the fullest record evidence to show that it did exist, (false in fact,) then he would not have had the constitutional privilege, notwithstanding the proof.
It is the fact which the Constitution guaranties. The evidence, the mode of allegation and proof, is left to the Legislature. Another clause, not this, puts some restriction on the power of the Legislature as to indictments; but that affects the notice of the crime. The Constitution no where meddles with the evidence in criminal cases, except to require strong evidence to refuse bail, and to give compulsory process for witnesses, and to *438 give the righ't to meet the witnesses face to face. The Legislature is trusted in all other respects.
And here we may say, further, that, a fact may exist, and the evidence may exist, and never be called out. It may be called put, and not be recorded. It may be recorded and lost, and so be non-existent. The Legislature takes cognizance of these possibilities. It requires that the fact of trial in the proper county shall exist. It requires the existence of the proof for it requires, by express law, the production of the proof on the trial: Code, 5125. But there it stops. There it has fulfilled the Constitution. Now it says, “after all this, if there is a failure to put this proof of record, the presumption shall supply that deficiency in recording the proof, not the failure to make it. We know that in many cases that proof is made, when by inadvertence the statement is omitted; we know that by trickery and fraud, it is often left out; we know that the prisoner, when it is not proved, can easily put it down by express averment; and we therefore do not infringe his right to trial in the proper county, when we say that the general allegation in a bill of exceptions, that this was all the evidence, shall not be construed to exclude the conclusion that there was evidence of venue; but there shall also be the specific allegation added, “and there was no other proof of venue,” so as to show that the proof on that subject was a matter to which special attention was called, and not a thing omitted by mere oversight.” Such an act comes within that wise announcement of Lord Denman, as to the reform of criminal proceedings, “than which nothing is more worthy the attention of a civilized state.” *439 On the other band, to hold that this clause is void, is not to guard the real rights of the defendant; but it is to make fraud on courts, and the benefit of mistake and inadvertence, constitutional privileges too sacred for the Legislature of the State to abolish or take away. This is not a cause in which that conservative principle, that the Court will hesitate to declare the act of the Legislature void, ought to be departed from, if there is any case in which it should be. On the other hand, this is an effort of the Legislature to encourage the honest administration of the criminal law, by doing away with the temptation to one of the most frequent frauds on the law. I earnestly ask the Court to give these views their full weight, and to regard the importance of the question, not as affecting this prisoner, not as affecting this amendment alone, but as affecting the principles of constitutional law, laying down a new'canon of construction, and restricting the right of the Legislature to pass statutes of amendment in criminal cases.
TueNBY, J., delivered the opinion of the Court.
The opinion delivered on a former day does not hold “that the Legislature is powerless to cure defects in criminal procedure in any case,” but does hold that the Legislature, in its efforts to cure defects, must confine itself to the powers given it by the Constitution; and if it shall transcend such power, its acts are void. The Constitution is the supreme law; the Legislature is its creature; that the creature shall be greater than, or even equal to its creator, is a legal as well as a natural impossibility.
*440 It is the fact that the offense has been committed in a county that gives the court of that county jurisdiction to try the accused. The fact is an ingredient absolutely necessary to conviction, and must (not merely may) be made to appear.
Take the provision of the Code, making it unnecessary to lay venue in the indictment, and the provision involved here, put them together, and bring to this Court a case only made out by their application, and we have a proceeding as nearly .void of form and substance as it is reasonably convenient to imagine.
The instance put, that, “in ninety-nine cases in a hundred, the party is tried, and there is no evidence preserved at all, and if these cases are brought to this Court, the Court presumes the party has had his constitutional privilege of being tried in the proper county,” does not support • the view insisted upon by the Attorney General; because it is the duty of the party appealing to tender his bill of exceptions; and if he fail to do so, he thereby conclusively admits that in the matter usually constituting the bill of exceptions there is no error, and that he relies upon error in the matter of record or in the charge of the Court.
If, on the other hand, a bill of exceptions perfect in form is tendered and accepted by the State and the Court, turns out to be substantially defective, we must presume the Court to have done all it undertook to do; that is, made a full and complete bill of exceptions; the undertaking of the parties and the Court excludes all reason for intendment, committing them to the perfectness of their effort to present to this Court a full and *441 true account of the evidence upon which the action of the inferior court was based.
The tender of a bill of exceptions is notice to the State and Attorney General that in it are supposed errors, for which the Court will be asked to reverse.
Being so advised, it is the duty of the State, through its Attorney General, to see that every essential element for its interest is communicated to this Court through the bill of exceptions.
The attempted parallel between the question in hand and the rule, that the accused, to be able to avail himself of a former acquittal or conviction, must plead it specially, fails. These defenses are not to the merits, do not involve the question of guilt, but simply matters of record, by resort to which the accused passes by, a plea to the merits onerating the State with the burden of affirmative proof, and takes upon himself the obligation of showing affirmatively matter in bar of the prosecution; and if his plea fails, he returns to the legal presumption of his innocence, as though he had never attempted matter in bar.
The presumption, that no such special defenses exist, is the inevitable offspring of the legal presumption that every man is innocent until the contrary appears by the proof. It is not in the power of the Legislature to so regulate the proof as to throw the burden on the defendant.
It would be extremely absurd to have a rule by which every unprincipled vagabond could prefer his charges, and then rest, the accused being required to show, negatively, his innocence, or else suffer the severest *442 penalty. The broad statement of the proposition is sufficient .to repel it.
We can not consider the proposition, “that by fraud and trickery the proof of venue may be left out of the bill of exceptions.” If we supply essential want in one thing, by such presumption, we may in all things. We are only authorized to try a cause as the record presents it; and if Attorneys General and courts are the victims of “fraud and trick,” it is the misfortune of communities, and not the fault of revising 'courts. The remedy is in the hands of communities, and not within the province of an appellate jurisdiction.
Judicial construction of constitutions has gone to the verge of liberality. To it mainly attaches the sad responsibility of our struggle, in its evening twilight, to preserve the fragments of organic security. Stare decisis.

 See also Andy Williams v. State, ante 37, and Timms v. State, 4 Col. 138.